**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN G. DEMCZYK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 10-239** |
| | ) | **Chief Judge Gary L. Lancaster** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Gary L. Lancaster
Chief Judge                                    October **2 1**, 2010

### I.    Introduction

Plaintiff Brian G. Demczyk ("Demczyk") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act ("Act") [42 U.S.C. §§ 401-433]. For the reasons that follow, the administrative decision of the Commissioner will be affirmed.

### II. Procedural History

Demczyk protectively applied for disability insurance benefits on February 21, 2007, alleging disability as of August 19, 2005. (R. at 91, 103). The application was

administratively denied on June 14, 2007. (R. at 76). Demczyk

responded on July 18, 2007, by filing a timely request for an

administrative hearing. (R. at 88). He amended his alleged

onset date to May 12, 2006, which coincided with his fiftieth

birthday. (R. at 16, 29). On November 20, 2008, a hearing was

held in Pittsburgh, Pennsylvania, before Administrative Law

Judge Alma S. Deleon (the "ALJ"). (R. at 26). Demczyk, who was

represented by counsel, appeared and testified at the hearing.

(R. at 29-46). Dr. Fred A. Monaco, an impartial vocational

expert, also testified at the hearing. (R. at 46-49). In a

decision dated December 17, 2008, the ALJ determined that

Demczyk was not "disabled" within the meaning of the Act. (R.

at 13-25). The Appeals Council denied Demczyk's request for

review on January 8, 2010, thereby making the ALJ's decision the

final decision of the Commissioner in this case. (R. at 1).

Demczyk commenced this action on February 19, 2010, seeking

judicial review of the Commissioner's decision. (Doc. Nos. 1 &

3). Demczyk and the Commissioner filed motions for summary

judgment on June 2, 2010, and July 21, 2010, respectively.

(Doc. Nos. 8 & 10). These motions are the subject of this

memorandum opinion.

## III. **Standard of Review**

This Court's review is plenary with respect to all

questions of law. *Schaudeck v. Commissioner of Social Security*

*Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect
to factual issues, judicial review is limited to determining
whether the Commissioner's decision is "supported by substantial
evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43,
46 (3d Cir. 1994). The Court may not undertake a *de novo* review
of the Commissioner's decision or re-weigh the evidence of
record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-
1191 (3d Cir. 1986). Congress has clearly expressed its
intention that "[t]he findings of the Commissioner of Social
Security as to any fact, if supported by substantial evidence,
shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence
"does not mean a large or considerable amount of evidence, but
rather such relevant evidence as a reasonable mind might accept
as adequate to support a conclusion." *Pierce v. Underwood*, 487
U.S. 552, 565,108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal
quotation marks omitted). As long as the Commissioner's
decision is supported by substantial evidence, it cannot be set
aside even if this Court "would have decided the factual inquiry
differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.
1999). "Overall, the substantial evidence standard is a
deferential standard of review." *Jones v. Barnhart*, 364 F.3d
501, 503 (3d Cir. 2004).

    In order to establish a disability under the Act, a
claimant must demonstrate a "medically determinable basis for an

impairment that prevents him [or her] from engaging in any
'substantial gainful activity' for a statutory twelve-month
period." *Stunkard v. Secretary of Health & Human Services*, 841
F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777
(3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A
claimant is considered to be unable to engage in substantial
gainful activity "only if his [or her] physical or mental
impairment or impairments are of such severity that he [or she]
is not only unable to do his [or her] previous work but cannot,
considering his [or her] age, education, and work experience,
engage in any other kind of substantial gainful work which
exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A),
1382c(a)(3)(B).

To support his or her ultimate findings, an administrative
law judge must do more than simply state factual conclusions.
He or she must make specific findings of fact. *Stewart v.
Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d
Cir. 1983). The administrative law judge must consider all
medical evidence contained in the record and provide adequate
explanations for disregarding or rejecting evidence. *Weir on
Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984);
*Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant
to its legislatively delegated rulemaking authority, has

4

promulgated a five-step sequential evaluation process for the
purpose of determining whether a claimant is "disabled" within
the meaning of the Act. The United States Supreme Court
recently summarized this process as follows:

> If at any step a finding of disability or non-
> disability can be made, the SSA will not review the
> claim further. At the first step, the agency will
> find non-disability unless the claimant shows that he
> is not working at a "substantial gainful activity."
> [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two,
> the SSA will find non-disability unless the claimant
> shows that he has a "severe impairment," defined as
> "any impairment or combination of impairments which
> significantly limits [the claimant's] physical or
> mental ability to do basic work activities." §§
> 404.1520(c), 416.920(c). At step three, the agency
> determines whether the impairment which enabled the
> claimant to survive step two is on the list of
> impairments presumed severe enough to render one
> disabled; if so, the claimant qualifies. §§
> 404.1520(d), 416.920(d). If the claimant's impairment
> is not on the list, the inquiry proceeds to step four,
> at which the SSA assesses whether the claimant can do
> his previous work; unless he shows that he cannot, he
> is determined not to be disabled. If the claimant
> survives the fourth stage, the fifth, and final, step
> requires the SSA to consider so-called "vocational
> factors" (the claimant's age, education, and past work
> experience), and to determine whether the claimant is
> capable of performing other jobs existing in
> significant numbers in the national economy. §§
> 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157
L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative
determination is sought, the agency's decision cannot be

5

affirmed on a ground other than that actually relied upon by the

agency in making its decision. In *Securities & Exchange*

*Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91

L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple
> but fundamental rule of administrative law. That rule
> is to the effect that a reviewing court, in dealing
> with a determination or judgment which an
> administrative agency alone is authorized to make,
> must judge the propriety of such action solely by the
> grounds invoked by the agency. If those grounds are
> inadequate or improper, the court is powerless to
> affirm the administrative action by substituting what
> it considers to be a more adequate or proper basis.
> To do so would propel the court into the domain which
> Congress has set aside exclusively for the
> administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of

Appeals for the Third Circuit has recognized the applicability

of this rule in the Social Security disability context.

*Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001).

Thus, the Court's review is limited to the four corners of the

ALJ's decision.

## VI. The ALJ's Decision

In his decision, the ALJ determined that Demczyk had not

engaged in substantial gainful activity subsequent to his

alleged onset date. (R. at 18). Demczyk was found to be

suffering from fractures of the lower limbs and left wrist. (R.

at 18). These impairments were deemed to be "severe" within the

6

meaning of 20 C.F.R. § 404.1520(a)(4)(ii). (R. at 18). The ALJ
concluded that Demczyk's impairments did not meet or medically
equal an impairment listed in 20 C.F.R. Part 404, Subpart P,
Appendix 1 (the "Listing of Impairments" or, with respect to a
single impairment, a "Listed Impairment" or "Listing"). (R. at
18).

In accordance with 20 C.F.R. § 404.1545, the ALJ assessed
Demczyk's residual functional capacity as follows:

> After careful consideration of the entire record, I
> find that the claimant has the residual functional
> capacity to perform sedentary work as defined in 20
> CFR 404.1567(a) except with the following limitations
> to lift and carry no more than 10 pounds, to have a
> sit/stand option at his discretion, to push and pull
> is limited in his lower and upper extremities, to
> bend, stoop, squat, kneel, climb, balance and walk on
> occasions, and to be exposed to extreme cold.

(R. at 19). Demczyk had past relevant work experience as a
research engineer. (R. at 24). Dr. Monaco classified this
position as a "skilled" job at the "light"[1] level of exertion.
(R. at 47). Because Demczyk was deemed to be capable of
engaging in only "sedentary"[2] work activities, it was determined
that he could not return to his past relevant work. (R. at 24).

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent
lifting or carrying of objects weighing up to 10 pounds. Even though the
weight lifted may be very little, a job is in this category when it requires
a good deal of walking or standing, or when it involves sitting most of the
time with some pushing and pulling of arm or leg controls." 20 C.F.R. §
404.1567(b).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and
occasionally lifting or carrying articles like docket files, ledgers, and
small tools. Although a sedentary job is defined as one which involves

Demczyk was born on May 12, 1956, making him fifty years old as of his amended onset date and fifty-two years old as of the date of the ALJ's decision. (R. at 29). He was classified as a "person closely approaching advanced age" under the Commissioner's regulations. 20 C.F.R. § 404.1563(d). He had more than a high school education and an ability to communicate in English.[3] (R. at 24, 30); 20 C.F.R. § 404.1564. Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Demczyk could work as a mechanical engineer, material engineer, or post-secondary physics teacher. (R. at 25). Dr. Monaco's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A).[4] (R. at 47).

## V. Discussion

Demczyk's impairments are attributable to an accident that occurred in California on April 23, 2004. (R. at 35, 146, 315). On that occasion, Demczyk was struck by a van traveling at the

---

sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[3] Demczyk testified at the hearing that he had a bachelor's degree in physics, a master's degree in mechanical engineering, and a doctorate degree in material science. (R. at 30-31).

[4] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

rate of forty-five miles per hour while walking to work. (R. at 45). The momentum of the collision caused Demczyk to be thrown roughly fifty feet from the point of impact. (R. at 45). He sustained fractures of his pelvis, right leg, left foot and left wrist. (R. at 31-32). A rod was inserted into his right leg, and his pelvis had to be surgically reconstructed. (R. at 31-32, 45, 340, 345). After a six-month layoff from his job, Demczyk went back to work as a research engineer. (R. at 35). He was working on a part-time basis. (R. at 251).

On May 9, 2005, Dr. Michael Bellino, an orthopedic surgeon affiliated with the Stanford University Medical Center, recommended that Demczyk increase his work hours to thirty hours per week. (R. at 251). One year later, Demczyk was no longer working as an engineer. (R. at 258). He testified at the hearing that his return to work had lasted for only nine months, and that he had been forced to quit his job entirely due to pain resulting from his injuries. (R. at 35). Demczyk evidently stopped working in August 2005. (R. at 33). His job had apparently required him to walk on a frequent basis. (R. at 316). In a letter dated September 13, 2006, Dr. Bellino stated that Demczyk was "unable to return to his engineering position on a full-time basis." (R. at 228).

Dr. S.P. Barua performed a consultative physical examination of Demczyk on May 14, 2007. (R. at 320). Two days

later, Dr. Barua reported that Demczyk could "frequently" lift and "occasionally" carry objects weighing up to ten pounds.[5]  (R. at 319).  Dr. Barua opined that Demczyk could stand for up to four hours and sit for up to six hours during the course of an eight-hour workday.  (R. at 319).  Demczyk's pushing and pulling abilities were deemed to be "unlimited."  (R. at 319).  Dr. Barua indicated that Demczyk could "never" climb, and that he could engage in only "occasional" bending, kneeling, stooping, crouching and balancing.  (R. at 320).  It was further noted that Demczyk needed to avoid heights, humidity and temperature extremes.  (R. at 320).

Dr. Frank S. Bryan, a non-examining medical consultant, opined on June 13, 2007, that Demczyk could perform the full range of light work activities.  (R. at 322-330).  Dr. Bryan dismissed the postural limitations identified by Dr. Barua as having been based primarily on "the subjective report of symptoms" provided by Demczyk.  (R. at 329).  According to Dr. Bryan, Demczyk could sit, stand or walk for up to six hours during the course of an eight-hour workday.  (R. at 324).

On March 14, 2008, Dr. William Kirkpatrick, Demczyk's primary care physician, completed a "physical residual functional capacity questionnaire" describing Demczyk's physical

---

[5] Dr. Barua also indicated that Demczyk could "occasionally" lift objects weighing up to twenty-five pounds and carry objects weighing up to twenty pounds.  (R. at 319).

10

impairments and limitations. (R. at 349-352). Dr. Kirkpatrick reported that Demczyk could sit, stand or walk for "less than" two hours during the course of an eight-hour workday, that he would "frequently" experience pain that was significant enough to interfere with his "attention and concentration," and that he was incapable of performing tasks associated with "low stress" jobs. (R. at 350). According to Dr. Kirkpatrick, Demczyk could "never" stoop, bend, crouch, squat or climb. (R. at 351). Dr. Kirkpatrick further stated that Demczyk would need to miss more than four days of work per month if he were to obtain a new job. (R. at 352).

The ALJ accorded "little weight" to Dr. Kirkpatrick's assessment, contending that it had been based primarily on Demczyk's subjective complaints rather than on objective medical evidence. (R. at 24). The ALJ's ultimate residual functional capacity finding was consistent with Dr. Barua's opinion that Demczyk was capable of performing a limited range of sedentary work. (R. at 19, 22, 315-320). Because Dr. Monaco was able to identify jobs that were consistent with Demczyk's residual functional capacity and vocational profile, it was determined that Demczyk was not statutorily "disabled." (R. at 24-25, 47-48).

In support of his motion for summary judgment, Demczyk argues that the ALJ should have found him to be *per se* disabled

under Listings 1.02[6] and 1.03.[7] (Doc. No. 9 at 3, 7-8). The Listing of Impairments describes impairments which preclude an individual from engaging in substantial gainful activity without regard to his or her age, education, or past work experience. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled, a claimant must show that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the

---

[6] "1.02 *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints. With:

    A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

    B. Involvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.02 (emphasis in original).

[7] "1.03 *Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint*, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.03 (emphasis in original).

12

criteria applicable to the most similar Listing. *Id.* The burden is on the claimant to present evidence in support of his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

In *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119-120 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit held that an administrative law judge's analysis at the third step of the sequential evaluation process must be sufficiently detailed to facilitate meaningful judicial review under § 405(g). The step-three finding in that case had been limited to a single sentence declaring that the claimant's severe "musculoskeletal" impairment did not "equal the level of severity of any disabling condition" appearing in the Listing of Impairments. *Burnett*, 220 F.3d at 119. Describing this finding as "hopelessly inadequate" and "beyond meaningful judicial review," the Court of Appeals vacated the administrative decision under review and remanded the case to the Commissioner for a meaningful analysis concerning the issue of *per se* disability. *Id.* at 119-120.

The ALJ's step-three analysis in this case consisted of the following:

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).**

> Special consideration has been given to the
> musculoskeletal system; however, the claimant's
> impairments do not rise to listing level severity.
> While the claimant sustained multiple fractures to his
> right leg, left foot and left wrist, the record
> reveals that these areas have healed.  His
> radiological findings showed that his fracture site
> was healed; there were no changes in the alignment of
> his fractures or complications with his hardware
> (Exhibit 4F).  He was even able to drive and perform
> yard work (Exhibit 5F).

(R. at 18)(boldface type in original).  Demczyk contends that

this analysis was not sufficiently exhaustive to satisfy the

requirements of *Burnett*.  (Doc. No. 9 at 8).  He further asserts

that a finding of *per se* disability was warranted in this case.

(Doc. No. 9 at 8).

In *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), the

Court of Appeals explained that *Burnett* does not require an

administrative law judge to "use particular language or adhere

to a particular format in conducting his [or her] analysis," and

that the essential requirement of *Burnett* is that there be

"sufficient development of the record and explanation of

findings to permit meaningful judicial review."  Ideally, an

administrative law judge should specifically identify the

particular Listings under consideration.  *Poulos v. Commissioner

of Social Security*, 474 F.3d 88, 93 (3d Cir. 2007).  The ALJ did

not do so in this case.  (R. at 18).  This failure, however, was

not *ipso facto* fatal.  A step-three analysis which does not

14

specify the Listing or Listings under consideration can satisfy the *Burnett* standard if it is sufficiently detailed to permit a reviewing court to trace the path of the administrative law judge's reasoning. *Lopez v. Commissioner of Social Security*, 270 Fed.Appx. 119, 120-123 (3d Cir. 2008); *Chanbunmy v. Astrue*, 560 F.Supp.2d 371, 381 (3d Cir. 2008). The ALJ's analysis satisfied this standard of minimal articulation.

It remains to be determined whether the ALJ's finding that Demczyk was not *per se* disabled is "supported by substantial evidence." 42 U.S.C. § 405(g). Demczyk argues that his impairments rendered him *per se* disabled under Listings 1.02 and 1.03. (Doc. No. 9 at 7-8). A careful reading of the Listings, however, reveals that Demczyk's contention is lacking in merit. Listing 1.00B2b2 provides:

> *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00B2b2
(emphasis in original). The documentary evidence indicates that
Demczyk needed only *one* cane to ambulate. (R. at 251, 255, 258,
261, 263, 315, 345-346). On May 5, 2006, Dr. Bellino reported
that when Demczyk was "walking far distances," he used a cane
"in his *right hand* to help with ambulation." (R. at
258)(emphasis added). He was able to walk *four* blocks. (R. at
251). While Demczyk's injuries were undoubtedly serious, they
did not result in the "extreme limitation of the ability to
walk" necessary to establish an inability to ambulate
effectively.[8] 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing
1.00B2b1. The ALJ's observation that Demczyk was capable of
performing yard work was supported by the evidentiary record.
(R. at 18, 346). Consequently, the Court has no basis for
disturbing the ALJ's finding that Demczyk was not *per se*
disabled under the Listing of Impairments.

Demczyk contends that the ALJ erred in failing to give
"controlling weight" to the opinions expressed by Dr. Bellino
and Dr. Kirkpatrick. (Doc. No. 9 at 3, 8-11). The opinion of a
treating physician is entitled to "controlling weight" only when
it is "well-supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with

[8] The Court does not understand Demczyk to argue that he suffered from an
"inability to perform fine and gross movements effectively." 20 C.F.R. Part
404, Subpart P, Appendix 1, Listing 1.02B.

16

the other substantial evidence in [the claimant's] case record."
20 C.F.R. § 404.1527(d)(2). An opinion declaring an individual
to be "disabled" is *never* entitled to "controlling weight,"
since the ultimate question of disability is reserved for the
Commissioner's determination. *Wright v. Sullivan*, 900 F.2d 675,
683 (3d Cir. 1990); 20 C.F.R. § 404.1527(e)(1).

On September 13, 2006, Dr. Bellino reported that Demczyk
was "unable to return to his engineering position on a full-time
basis." (R. at 228). The ALJ *credited* Dr. Bellino's opinion in
determining that Demczyk could not return to his past relevant
work as a research engineer. (R. at 24). Hence, Demczyk has no
basis for impugning the ALJ's evaluation of Dr. Bellino's
opinion.

The questionnaire completed by Dr. Kirkpatrick on March 14,
2008, identified serious limitations which would most likely
preclude an individual from engaging in substantial gainful
activity. (R. at 349-352). The ALJ accorded "little weight" to
Dr. Kirkpatrick's assessment because he found it to be based
more on Demczyk's subjective complaints than on objective
medical evidence. (R. at 24). The ALJ's ultimate residual
functional capacity finding was consistent with Dr. Barua's
opinion that Demczyk was capable of engaging in a limited range
of sedentary work activities. (R. at 19, 22, 315-321).

As noted earlier, a treating physician's medical opinion is entitled to "controlling weight" only where it is "not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). In other words, the Commissioner is not *required* to give the opinion of a treating physician "controlling weight" if that opinion is contradicted by an opinion rendered by another competent medical professional. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Dr. Barua found Demczyk to be capable of performing sedentary work. (R. 315-321). It was the prerogative of the ALJ "to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). It is beyond dispute that a well-supported residual functional capacity assessment provided by a consultative medical examiner can constitute "substantial evidence" of a claimant's ability to work, even where that assessment is contradicted by a report supplied by the claimant's treating physician.[9] *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)(observing that "one medical report by an examining physician may constitute substantial evidence of a

[9] This is not a situation in which the opinion of a treating physician has been rejected solely on the basis of a contrary assessment provided by a non-examining medical consultant. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008). Although the ALJ referenced Dr. Bryan's opinion, she did not rely on it. (R. at 23). Dr. Bryan found Demczyk to be capable of performing an unlimited range of light work. (R. at 322-330). In determining that Demczyk could perform only a limited range of sedentary work, the ALJ adopted Dr. Barua's examination findings rather than Dr. Bryan's assessment. (R. at 19-24).

18

claimant's physical condition"); *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)(stating that a consultative medical examiner "may bring both impartiality and expertise" to the adjudicatory process, whereas a treating physician "may too quickly find disability"). Where conflicting medical evidence is presented, it is emphatically the province of the Commissioner to resolve that conflict. *Lambertson v. Astrue*, 625 F.Supp.2d 160, 175-177 (D.Del. 2009). In this context, the Court has no mandate to re-weigh the evidence contained in the record. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D.Pa. 1998).

In his questionnaire, Dr. Kirkpatrick opined that Demczyk's pain would "frequently" interfere with the "attention and concentration" that he needed to perform simple work-related tasks. (R. at 350). Demczyk argues that the ALJ erred in failing to account for this limitation in her residual functional capacity assessment and corresponding hypothetical question to Dr. Monaco. (Doc. No. 9 at 3, 13). In order for a vocational expert's testimony to constitute competent evidence of the existence of jobs in the national economy consistent with the claimant's residual functional capacity, the administrative law judge's hypothetical question must adequately convey to the vocational expert *all* of the claimant's credibly established limitations. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir.

19

1987). If a credibly established limitation is omitted from the hypothetical question, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Burns v. Barnhart*, 312 F.3d 113, 122-124 (3d Cir. 2002).

The ALJ was not required to account for every limitation *alleged* by Demczyk. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). Instead, she was required to account for all of Demczyk's *credibly established* limitations. *Id.* Dr. Kirkpatrick's opinion that pain would "frequently" interfere with Demczyk's "attention and concentration" was implicitly contradicted by Dr. Barua's examination report. Dr. Barua stated that Demczyk had "no difficulty with the activities of daily living." (R. at 316). In determining that Demczyk could perform the sedentary work activities identified by Dr. Barua, the ALJ was not required to address each and every limitation referenced by Dr. Kirkpatrick on a piecemeal basis.[10] *Johnson v.*

---

[10] Dr. Barua determined that Demczyk could "never" climb. (R. at 320). The ALJ's residual functional capacity assessment and corresponding hypothetical question to Dr. Monaco described an individual who was capable of climbing on an "occasional" basis. (R. at 19, 48). Demczyk does not argue that the ALJ erred in failing to incorporate a total preclusion of "climbing" within her residual functional capacity assessment. In any event, sedentary jobs rarely require the performance of postural activities, thereby rendering the ALJ's error harmless. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). "[T]he burden of showing that an [administrative] error [wa]s harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, ___U.S.___, 129 S.Ct. 1696, 1706, 173 L.Ed.2d 532 (2009).

*Commissioner of Social Security*, 529 F.3d 198, 203-205 (3d Cir. 2008).

Relying on Social Security Ruling 83-12, Demczyk argues that the sit/stand option included within the ALJ's residual functional capacity finding precludes him from performing some sedentary jobs.[11]   (Doc. No. 9 at 12).  He contends that sedentary jobs "are typically structured so that a claimant cannot sit and stand at will." (Doc. No. 9 at 12).  This assertion, while true, is inconsequential.  The ALJ included the sit/stand option within her hypothetical question to Dr. Monaco. (R. at 48).  Since the record contains testimonial evidence establishing the existence of jobs consistent with Demczyk's specific residual functional capacity, it makes no difference how sedentary jobs are "typically structured." *Boone v. Barnhart*, 353 F.3d 203, 210 (3d Cir. 2003)("Consequently, we shall not interpret SSR 83-12 to mandate reversal whenever the ALJ does not set out specific findings concerning the erosion of the occupational base if, as here, the ALJ has received the assistance of a VE in considering the more precise question whether there are a significant number of jobs in the economy that the claimant can perform.").  The Commissioner may rely on

---

[11] Social Security Rulings are binding on all components of the SSA. 20 C.F.R. § 402.35(b)(2).  Nevertheless, they do not have the force of law, and they can be superseded by subsequent legislation, regulations, court decisions, or agency rulings.  *Heckler v. Edwards*, 465 U.S. 870, 873, n. 3, 104 S.Ct. 1532, 79 L.Ed.2d 878 (1984).

a Social Security Ruling as a replacement for vocational expert testimony only where it is "crystal-clear" that the Social Security Ruling is probative as to the manner in which the claimant's unique limitations erode his or her occupational base. *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005). In this case, however, the ALJ relied on specific vocational expert testimony rather than on a more generalized Social Security Ruling. Because Dr. Monaco's testimony established the existence of jobs requiring the performance of tasks consistent with the sit/stand option identified by the ALJ, the Commissioner satisfied his burden of proof at the fifth step of the sequential evaluation process.[12] *Sykes v. Apfel*, 228 F.3d 259, 273 (3d Cir. 2000).

Demczyk takes issue with the ALJ's decision not to fully credit his subjective complaints of pain. (Doc. No. 9 at 11). Nonetheless, he does not specifically identify the subjective complaints at issue. As far as the Court can tell, the ALJ properly accounted for Demczyk's testimony. For instance, Demczyk testified that exposure to cold temperatures would

---

[12] In his statement of the issues presented for judicial review, Demczyk claims that the ALJ failed to consider his "use of a cane in performing bimanual sedentary jobs." (Doc. No. 9 at 3). Nonetheless, he does not address this issue in the body of his brief. Instead, he discusses the extent to which his need for a sit/stand option would decrease or eliminate his ability to perform sedentary work. (Doc. No. 9 at 12). To the extent that Demczyk intended to advance a distinct argument concerning the effect that his use of a cane would have on his ability to work, his failure to address it in the body of his brief constitutes a waiver of the issue. *Wolotka v. School Town of Munster*, 399 F.Supp.2d 885, 901 (N.D.Ind. 2005); *Grimaldo v. Reno*, 189 F.R.D. 617, 619 (D.Colo. 1999).

exacerbate his pain. (R. at 33, 42). The ALJ credited this testimony by finding that Demczyk could not work in extremely cold environments. (R. at 19). The sit/stand option contained within the ALJ's residual functional capacity finding was also based on Demczyk's testimony. Dr. Barua evidently believed that Demczyk did *not* need a sit/stand option. (R. at 319). The ALJ's finding that a sit/stand option was necessary appears to have been based entirely on Demczyk's subjective complaints. (R. at 40). Since Demczyk identifies no specific inconsistencies between his subjective complaints and the ALJ's factual findings, no further consideration of that issue is warranted.

## VI. Conclusion

For the foregoing reasons, the decision of the Commissioner is "supported by substantial evidence" within the meaning of § 405(g). Accordingly, the Court will deny Demczyk's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the Commissioner's administrative decision.

AND NOW, this 21st day of October, 2010, IT IS HEREBY ORDERED that the motion for summary judgment filed by the Plaintiff (*Document No. 8*) is **DENIED**, and that the motion for summary judgment filed by the Defendant (*Document No. 10*) is **GRANTED**. In accordance with the fourth sentence of 42 U.S.C. §

405(g), the administrative decision of the Commissioner of Social Security is hereby **AFFIRMED**.

BY THE COURT:

Gary L. Lancaster
Chief United States District Judge

cc: All counsel of record